RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0150p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,

              *Plaintiff-Appellee,*

    *v.*

BLANCA JIMENEZ,

              *Defendant-Appellant.*

No. 08-6435

_____

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-00093-001—Aleta Arthur Trauger, District Judge.

Argued: April 30, 2010

Decided and Filed: May 20, 2010

Before: COOK and McKEAGUE, Circuit Judges; HOOD, Senior District Judge.[*]

_____

## COUNSEL

**ARGUED:** Kathleen G. Morris, LAW OFFICES, Nashville, Tennessee, for Appellant. Mary Elizabeth McCullohs, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee. **ON BRIEF:** Kathleen G. Morris, LAW OFFICES, Nashville, Tennessee, for Appellant. Mary Elizabeth McCullohs, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for Appellee.

_____

## OPINION

_____

McKEAGUE, Circuit Judge. Defendant Blanca Jimenez, a citizen of Mexico, pleaded guilty to the charge of illegally re-entering the United States after having previously been deported following an aggravated felony conviction. The district court sentenced her at the low end of the advisory Sentencing Guidelines range to a prison term of 30 months.

_____

[*] The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

Defendant contends on appeal that the district court miscalculated the Guidelines range by relying on findings that were not supported by sufficient evidence. She also contends the sentence is substantively unreasonable because the district court relied on an impermissible purpose in imposing the prison sentence—namely, to promote rehabilitation. For the reasons that follow, we affirm the judgment of sentence.

## I. BACKGROUND

On July 24, 2008, defendant Blanca Jimenez pleaded guilty to having illegally re-entered the United States after having been removed following a conviction for an aggravated felony. 8 U.S.C. § 1326(a) and (b)(2). During the plea hearing, defendant's counsel explained that defendant had, at some unknown time, been struck by a car as a pedestrian and had suffered head injuries that resulted in memory difficulties. Counsel also explained that defendant had been the victim of a brutal rape six months earlier in Nashville. Further, although Jimenez had complained about the adequacy of medical care she had received at the local jail, her attorney represented that she wished to and was competent to proceed with the plea hearing. The district court made inquiry of Jimenez and assured itself that she was competent to proceed and knowingly and voluntarily waived her right to trial.

In establishing the factual basis for the plea, Immigration and Customs Enforcement ("ICE") Special Agent Jeremy Ridenour, under oath, explained: that defendant came to the attention of authorities in Davidson County, Tennessee after she was arrested for public intoxication; that she had been removed to Mexico, her native country, on April 11, 1997; that in 1995, she had been convicted in Arizona of forgery and assisting a criminal syndicate, each considered an "aggravated felony;" and that ICE records were devoid of evidence that defendant had applied for or received permission to re-enter the United States. Defendant confirmed the accuracy of Ridenour's statement. The district court reserved acceptance of the plea pending sentencing.

The sentencing proceeded on November 20, 2008. The district court first addressed defendant's objection to the proposed finding that Jimenez had re-entered the United States by December 30, 1997, as evidenced by the fact that she was arrested on that date in Salinas, California and charged with assaulting her live-in boyfriend with a ceramic statue. Defendant did not directly challenge the notion that she had re-entered by December 1997,

but argued the government failed to prove she remained continuously in the United States after that date.  Defendant proposed that she might have left the United States again since December 1997 and re-entered illegally as recently as August 2007.  If so, then she would not be subject to assessment of an additional criminal history point pursuant to U.S.S.G. § 4A1.2(e) for a "prior sentence" imposed within ten years of the commencement of the instant illegal re-entry offense (i.e., 30-day sentence imposed in Maricopa County, Arizona on May 14, 1994, for solicitation to commit forgery).  The district court overruled defendant's objection, observing that the PSR showed Jimenez had had numerous interim brushes with law enforcement—in January 1998, September 2002, July 2003, March 2004, May 2004, October 2007, and February 2008—and had neither challenged this showing nor presented any support for a finding that she had left again and re-entered more recently than December 1997.  The district court concluded that the preponderance of the evidence weighed in favor of finding that Jimenez came back in December 1997 and never left again.

Next, the district court considered defendant's objection to the sufficiency of the government's proof of two other convictions for which the PSR recommended assessment of two additional criminal history points.  The convictions, in Salinas, California, were for petty theft (guilty plea, March 12, 1998) and for inflicting corporal injury on her boyfriend (*nolo contendere* plea, April 9, 1998).  Because Monterey County Superior Court records regarding these convictions had been "purged" pursuant to California law, the government substantiated the convictions with certified copies of disposition records from the California Department of Justice, plus fingerprint verification by the FBI through the Criminal Justice Information System.   Defendant argued these records were insufficient to satisfy the requirements set forth in *Shepard v. United States*, 544 U.S. 13 (2005), because they did not include "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [ ] some comparable judicial record of this information." *Id.* at 26. Again, the district court overruled the objection, holding that the admitted exhibits were sufficiently reliable, being unrefuted, to confirm the accuracy of the PSR information.

The district court went on to formally accept defendant's guilty plea. The court also accepted the contents of the PSR as its findings of fact and conclusions of law, over defendant's objections. Accordingly, in its calculation of the governing advisory Guidelines

range, the court concluded that defendant had a total offense level of 13 and a criminal history category of V, producing a sentencing range of 30 to 37 months.

Defendant Jimenez did not exercise her right to allocution, preferring to allow her attorney to speak for her. Counsel began her remarks by acknowledging that her client's criminal history, viewed in the abstract, could justify the 30-to-37 month sentencing range. However, she characterized Jimenez as a unique individual with a personal history distinguishing her as a victim . . . a victim of memory loss, of criminal assault, of continuing untreated physical ailments, of flawed immigration policy, of homelessness . . . such that a 30-month prison sentence represented unnecessary "overkill." Counsel requested a sentence of time served (i.e., nine months) plus immediate removal to Mexico. If a prison term were imposed, Counsel asked that Jimenez be recommended for placement in a Bureau of Prisons medical facility where her medical needs could be addressed. The Assistant U.S. Attorney responded by acknowledging that defendant's medical care needs represented a valid sentencing consideration, but reminded the court that defendant's illegal conduct warranted punishment and requested a sentence of 30 months' imprisonment.

In pronouncing sentence, the district court began by summarizing the "sad profile" of defendant's life. In light of this background, the court viewed the recommended 30-month prison sentence not as a lengthy sentence, but "as the compassionate thing to do." The court found no compelling reason to depart or vary from the advisory Guidelines range and found that a 30-month prison term would meet the purposes of sentencing prescribed at 18 U.S.C. § 3553(a), reflecting the seriousness of the offense, promoting respect for law, representing just punishment, and protecting the public from other crimes. "Moreover," the court observed that this period of incarceration would provide Jimenez with the medical and mental health treatment she so desperately needed. *Id.* at 35. The sentence included credit for time served.

On appeal, defendant asserts three claims of error. First, she contends the district court miscalculated the applicable Guidelines range by adding criminal history points based on inadmissible proof of her 1998 convictions for petty theft and "spousal battery." Second, she challenges the district court's finding that she re-entered the United States in 1997 and stayed here continuously thereafter as not supported by a preponderance of the evidence.

Third, defendant contends the 30-month sentence is substantively unreasonable because longer than necessary and because it was motivated by the improper purpose of "rehabilitating" her health, contrary to 18 U.S.C. § 3582(a).

## II. ANALYSIS

### A. Standard of Review

The district court's sentencing is reviewed for both procedural and substantive reasonableness under the deferential "abuse of discretion" standard. *Gall v. United States*, 552 U.S. 38, 41, 52-53 (2007). A district court will be deemed to have abused its discretion if it committed significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id.* at 51. The standard for evaluating whether a sentence is substantively unreasonable is summarized in *Gall* as follows:

> When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. [*Rita v. United States,* 551 U.S. 338 (2007)]. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

*Gall*, 552 U.S. at 51. In the Sixth Circuit, a rebuttable presumption of reasonableness applies to sentences within the properly calculated Guidelines range. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

**B.  Proof of Prior Convictions**

Defendant contends the district court committed procedural error by improperly calculating the Guidelines range.  Specifically, defendant argues the court improperly relied on inadmissible evidence of prior convictions in assessing criminal history points.  In reviewing the lower court's calculation of the Guidelines range, factual findings are reviewed for clear error and legal conclusions are reviewed de novo.  *United States v. Brattain*, 539 F.3d 445, 447 (6th Cir. 2008).  Defendant's argument that the district court improperly relied on inadmissible evidence arguably poses a pure legal question that warrants de novo review.  *See United States v. Carter*, 591 F.3d 656, 661 (D.C. Cir. 2010) (applying de novo review while refraining from deciding whether a more deferential standard could be applicable).

The Federal Rules of Evidence do not apply in sentencing proceedings.  Fed. R. Evid. 1101(d)(3); *United States v. Hamad*, 495 F.3d 241, 246 (6th Cir. 2007).  The bounds of admissibility in sentencing proceedings are defined by due process.  *See Stewart v. Erwin*, 503 F.3d 488, 494-95 (6th Cir. 2007).  Due process in this context prohibits the sentencing court from relying on materially false or unreliable information and requires that the defendant be afforded the opportunity to rebut adverse information demonstrably relied on by the sentencing court.  *Id.*

Defendant does not contend the evidence of the two prior convictions here relied on by the district court is materially false.  She made no effort in the district court to rebut the correctness of the certified records from the California Department of Justice substantiating the 1998 petty theft and spousal battery convictions.  She does not argue that she was denied the opportunity to rebut the information—although her attorney argued that Jimenez simply had no recollection of much of her criminal history.  Nor has defendant argued on appeal that the information is materially false.  Instead, her sole challenge was and is that, irrespective of the facial validity of the records relied on, they should be held unreliable because they fail to meet the requirements set forth in *Shepard v. United States*, 544 U.S. 13 (2005).

In *Shepard*, the Court stated its holding as follows:

> We hold that enquiry under the ACCA [Armed Career Criminal Act] to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of the plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of the information.

*Id.* at 26. Defendant thus argues that because the government in this case did not present the actual charging documents or plea agreements or plea hearing transcripts to substantiate the specifics of the 1998 convictions, the evidence presented was necessarily unreliable and insufficient to support enhancement of her criminal history level.

Defendant also cites *United States v. Medina-Almaguer*, 559 F.3d 420, 422-23 (6th Cir. 2009), where the court, following *Shepard*, rejected the government's use of a preliminary examination transcript to establish the nature of a prior conviction. The court held that the transcript, even assuming it might otherwise be deemed reliable, was insufficient because it did not reveal whether the defendant necessarily admitted the facts necessary to support a finding that his prior conviction was for a qualifying "drug trafficking offense," warranting a criminal history enhancement under U.S.S.G. § 2L1.2(b)(1)(A). Similarly, here, defendant contends, the certified records introduced by the government fail to identify the conduct she necessarily admitted when she was convicted of petty theft and spousal battery, the convictions used to enhance her criminal history level.

In response, the government correctly contends that *Shepard* and *Medina-Almaguer* are inapposite. The complained-of criminal history enhancements applied by the district court based on the 1998 convictions were made pursuant to U.S.S.G. § 4A1.1(c), based on the two "prior sentences." As such, the nature of the prior convictions is of little consequence, as long as the sentences imposed for the convictions represent qualifying "prior sentences," which they undisputedly do. *See* U.S.S.G. § 4A1.1, cmt. n.3 and § 4A1.2. In other words, the information furnished by the California Department of Justice was provided by the government and accepted by the district court to establish the *fact* of the prior convictions and the resulting sentences imposed, not to establish the *nature* of the convictions or the specific offense conduct.

This distinction is recognized in a uniform and growing body of case law. In *United States v. Sanders*, 470 F.3d 616, 623 (6th Cir. 2006), the court held that *Shepard* does not govern the distinct, antecedent inquiry whether the government has furnished sufficient evidence to prove merely that a conviction exists. *See also United States v. Caswell*, 456 F.3d 652, 658-59 (6th Cir. 2006) (*Shepard* prohibitions held not to come into play where the district court relied only on *fact* of prior convictions and made no findings regarding the circumstances of the convictions); *United States v. Carter*, 591 F.3d 656, 661-62 (D.C. Cir. 2010) (collecting cases and explaining that the *Shepard* requirements relate only to proof of the facts underlying a conviction and do not apply in evaluating the sufficiency of the government's proof of the existence of a prior conviction).

It follows that the requirements enforced in *Shepard* and *Medina-Almaguer* do not apply to the instant criminal history enhancement based on the 1998 convictions. In evaluating the sufficiency of the government's proofs, the district court was constrained only by the requirements of due process. The court was prohibited from relying on materially false or unreliable information and was obliged to give defendant the opportunity to rebut the information. Defendant has not challenged the sufficiency of the government's proofs on any of these grounds. She has not argued that the information furnished by the California Department of Justice was materially false. She has not offered any reason to find the information otherwise unreliable. Nor does she contend that she was denied fair opportunity to rebut the information.

The California Department of Justice records introduced by the government are certified by the custodian of the records and accompanied by FBI fingerprint verification that the records pertain to defendant Jimenez. In short, the exhibits relied on by the district court bear adequate indicia of reliability. The district court was entitled to rely on them in evaluating the appropriateness of the recommended criminal history point assessments. Further, the district court's findings that the 1998 convictions involved qualifying "prior sentences" under U.S.S.G. § 4A1.1(c) are supported by a preponderance of the evidence. We therefore reject this claim of procedural error.

**C. Proof of Re-entry and Continuous Stay**

Next, defendant contends the district court's finding that she re-entered the United States in December 1997 and remained here continuously thereafter is not supported by a preponderance of the evidence. Defendant does not contest the finding that she had re-entered by December 1997, but contends the government failed to show that she remained here continuously until her eventual arrest for public intoxication in March 2008, when ICE officials learned of her presence. Defendant contends the record leaves open the possibility that she left the United States in the interim and re-entered again as recently as October 2007. She acknowledges this is a question of fact subject to review only for clear error.

Defendant does not dispute that the offense she pleaded guilty to, being "found in" the United States after illegally re-entering following deportation, 8 U.S.C. §1326(a), is a continuing offense, deemed to have commenced on the date of illegal re-entry and continuing to the date of arrest for the offense. *See United States v. Are*, 498 F.3d 460, 464 (7th Cir. 2007); *United States v. Hernandez-Gonzalez*, 495 F.3d 55, 60-61 (3d Cir. 2007). But if her most recent illegal re-entry did not actually occur until October 2007, then she argues the district court's assessment of two criminal history points was improper. That is, the assessment of one point based on her 1994 conviction for solicitation to commit forgery in Maricopa, Arizona, pursuant to U.S.S.G. § 4A1.1(c) would be improper under § 4A1.2(e)(3) because it preceded commencement of this offense by more than ten years. In addition, the criminal history enhancement pursuant to § 4A1.1(e), based on commencement of the offense within two years after release from imprisonment for her 1995 convictions for forgery and assisting a criminal syndicate in Flagstaff, Arizona, would also be improper.

To be sure, the factual record of defendant's location after her illegal re-entry in December 1997 is not conclusive. As the district court observed, however, the PSR summary of defendant's numerous contacts with the criminal justice system is strongly suggestive of her continuous presence in the United States from December 1997 onward. There are gaps of time in which defendant managed to avoid recorded contact with law enforcement officials, i.e., from March 1998 to September 2002, and from June 2004 to October 2007. Yet, there is no evidence that defendant returned to Mexico or otherwise

departed the United States during this period. Defendant's argument about the possibility of an illegal re-entry more recent than December 1997 is based on unsupported speculation.

The information relied on by the district court appears to be reliable, is not materially contested, and supports the finding, by a preponderance of the evidence, that defendant illegally re-entered the United States in December 1997 and remained here continuously thereafter until her arrest in March 2008. Defendant has not demonstrated clear error. We therefore uphold the challenged criminal history enhancements.

### D.  Substantive Unreasonableness

Finally, defendant contends the 30-month sentence imposed by the district court is unreasonable because it is greater than necessary and based on an impermissible factor. She contends the district court imposed the sentence, "as the compassionate thing to do," to afford her medical and mental health treatment, a purpose at odds with Congress' admonition that "imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a).

Insofar as defendant contends the sentence is based on an  impermissible factor, it is properly deemed a substantive unreasonableness challenge. *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008) ("a sentence may be considered substantively unreasonable when the court selects a sentence arbitrarily, bases the sentence on impermissible factors, fails to consider relevant sentencing factors, or gives an unreasonable amount of weight to any pertinent factor.")  Because the 30-month sentence, however, is within the properly calculated advisory Guidelines range , it enjoys a rebuttable presumption of reasonableness. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008).

Defendant insists the presumption of reasonableness is rebutted where the district court so clearly violated the statutory prohibition against using imprisonment to promote rehabilitation. Yet, a fair reading of the sentencing transcript does not support defendant's argument and neither does governing Sixth Circuit law.

First, in explaining the rationale for the sentence, the district court, while expressing compassion for the hardships experienced by Jimenez, observed that defendant had committed a criminal offense and that a 30-month sentence "complies with all the purposes

of sentencing." Sent. tr. at 33.  Concluding that the Guidelines range had been properly calculated, the court saw no compelling reason to depart or vary from it.  *Id.* at 34.  With reference to the sentencing factors prescribed at 18 U.S.C. § 3553(a), the court held that the 30-month sentence "reflects the seriousness of the offense, promotes respect for the law, is a just punishment and will protect the public from further crimes by the defendant."  *Id.* at 35.  Among the factors substantiating the appropriateness of a within-Guidelines sentence, the court characterized as "most important" the need to provide defendant with needed medical and mental health treatment.  *Id.*  This consideration was consonant with the court's duty to consider "the need . . . to provide the defendant with needed . . . medical care"—hardly an impermissible factor.  18 U.S.C. § 3553(a)(2)(D).

Defendant equates the district court's recommendation of medical and mental health treatment with an inappropriate attempt to promote "rehabilitation."  Yet, the court's concern was clearly motivated by defendant's acknowledged "serious health problems and serious mental health issues."  Sent. tr. at 32-33.  The court saw the impending period of imprisonment, otherwise justified by legitimate penological purposes, as affording defendant the additional opportunity to receive needed care while in the custody of the Bureau of Prisons.  The transcript does not even hint at the notion that the prison sentence was imposed or lengthened to facilitate defendant's moral reformation, correction or rehabilitation.  Quite to the contrary, the court candidly recognized that it did *not* expect imprisonment to have any corrective impact on defendant:  "She will be deported when she finishes this sentence, and there's probably nothing for her in Mexico.  The Court predicts that she will be right back in this country as soon as she's deported . . . ."  *Id.*

Careful consideration of the court's explanation thus reveals that defendant's third claim of error is meritless.  Defendant has failed to demonstrate that the district court relied on an impermissible factor, and has thus failed to rebut the presumed reasonableness of her within-Guidelines sentence.

We recognize the potential tension between the § 3582(a) admonition not to use imprisonment to promote correction and rehabilitation and the § 3553(a)(2)(D) duty to consider the defendant's need for "educational or vocational training, medical care, or other correctional treatment."  The struggle to resolve the apparent tension has resulted in a split

of authorities among the circuits. *See In re Sealed Case*, 573 F.3d 844, 848-51 (D.C. Cir. 2009) (collecting cases). Some circuits have construed § 3582(a) as prohibiting the use of rehabilitation as a goal both in deciding whether to imprison and whether to impose a longer prison term. *Id.* at 849 (citing cases from the Second, Third, Tenth and Eleventh Circuits). Others, including the Sixth Circuit, have construed § 3582(a) as barring the sentencing court from choosing prison, rather than a non-incarceration sentence, to promote rehabilitation, but allowing the court to select a longer prison term to promote rehabilitation. *Id.* at 848-49 (citing cases from the Fifth, Sixth, Eighth and Ninth Circuits). *See United States v. Jackson*, 70 F.3d 874, 879-80 n.6 (6th Cir. 1995); *United States v. Johnson*, 221 F.3d 1336, 2000 WL 924344 (6th Cir. June 28, 2000) (unpublished).

Here, defendant does not argue that the district court considered an impermissible factor in deciding *whether* to impose a sentence of imprisonment. Rather, she contends the district court used an impermissible factor only to impose a longer-than-necessary sentence. Even if the factual record supported such a theory, it would not transgress the § 3582(a) admonition, as it has been construed and applied in the Sixth Circuit. Moreover, even if we were to apply § 3582(a) in a stricter fashion, like the Second, Third, Tenth and Eleventh Circuits, we would be hard-pressed to find error in this sentence. In *United States v. Hoffa*, 587 F.3d 610, 615 (3d Cir. 2009), the Third Circuit observed that, even though § 3582(a) bars consideration of rehabilitation concerns in deciding whether and how long to imprison, where imprisonment and its length are justified by traditional penological purposes, the sentencing judge is free to recommend that available rehabilitation services be afforded. The instant record discloses that this is exactly what happened in the instant sentencing.

The district court did not err. It did not rely on any impermissible factor. It did not abuse its discretion. The sentence is not substantively unreasonable. Defendant's final claim of error is therefore rejected as well.

### III. CONCLUSION

Accordingly, the district court's judgment of sentence is **AFFIRMED.**